(No. 12381.—Decree affirmed.)

MARGARET DUNN *et al.* Appellees, *vs.* HOWARD KEARNEY *et al.* Appellants.

*Opinion filed April 15, 1919.*

1. WILLS—*when devise is of a fee simple.* A devise of all the testator's real estate to his brother, "to have and to hold the same to him and his heirs forever," is a devise of a fee simple title, and the rule in *Shelley's case* has no application.

2. SAME—*when devise will lapse.* A legacy or devise will lapse where the legatee or devisee dies before the death of the testator.

3. SAME—*re-publication of the will by codicil does not revive lapsed devise.* Where a codicil disposing of certain lapsed legacies makes no reference to a clause of the will creating a devise of a fee which has lapsed by the death of the devisee, the re-publication of the will by the execution of the codicil does not affect such a clause nor create a new and different devise from that which has lapsed, so as to vest the fee in the heirs of the deceased devisee.

4. SAME—*when a devise will be sustained by implication.* Devises by implication are sustained where there is clearly shown in the will an intention on the part of the testator to make a devise, although, in fact, he has not done so by formal language in the will.

5. SAME—*a devise by implication cannot rest upon conjecture.* To uphold a gift by implication the inference from the will of the testator's intention cannot rest upon conjecture but must be such as to leave no hesitation in the mind of the court and permit of no other reasonable inference.

6. SAME—*if possible, a lapsed legacy or devise will sink into residuary clause.* If a legacy or devise lapses and there is a general residuary clause broad enough in terms to embrace it such legacy or devise will sink into the residuum; and this rule is based on the presumed intention of the testator that the residuary clause shall include everything not effectually devised or disposed of.

7. SAME—*particular mode of expression not necessary to constitute residuary clause.* The term "residue" means that which remains, and no particular mode of expression is necessary to constitute a residuary clause.

8. SAME—*a residuary clause should be construed to prevent intestacy.* A residuary clause should be so construed as to prevent intestacy of any part of the testator's estate unless there is an apparent intention to the contrary.

288 — 4

APPEAL from the Circuit Court of Jo Daviess county; the Hon. JAMES S. BAUME, Judge, presiding.

SHEEAN & SHEEAN, and JAMES M. SHEEAN, for appellants.

MARTIN J. DILLON, and F. J. STRANSKY, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Jo Daviess county sustaining the bill of appellees for partition. The questions presented to this court involve the construction of the last will and testament of Hamilton Kearney, deceased, and a codicil thereto.

The will in question was executed December 31, 1898. The portions of the will necessary to a decision of this case are as follows:

"*Second*—I give, devise and bequeath to my brother John Kearney all of my real estate, to have and to hold the same to him and his heirs forever.

"*Third*—I give, devise and bequeath to my dear friend Mrs. Jane Mosely the sum of $1000 and my old gray mare, buggy and harness; also, if she remains with me until my death, I give, devise and bequeath to her all my household goods of every description, including all articles in the cellar, but she shall not have power to sell the same but may give them away if she feels so disposed, but it is my express wish that they be not sold.

"*Fourth*—I give, devise and bequeath to my friend Mrs. Daisy Matthews the sum of $500.

"*Fifth*—I give, devise and bequeath to the widow of my brother David Kearney, Mrs. Rebecca Kearney, the sum of $500.

"*Sixth*—It is my will that my executor shall sell and convert into money all the grain and live stock remaining

in my possession at the time of my death, and the proceeds of the same, together with the residue of my estate after the payment of the legacies and bequests heretofore set forth, shall be divided equally among my nephews and nieces who are living at the time of my death, and William Hamilton Bertsch, who is the only relative bearing my name and the son of my niece, Mrs. Emma Bertsch. The names of my nephews and nieces, the children of my brothers John and David, and·my sister, Mrs. Ann McKinley, are· Mrs. Mary Knapp, William Kearney, son of David Kearney, Howard Kearney, John Kearney, Mrs. Ruth Schaible, Sarah Kearney, and Bessie Kearney, William Kearney, son of my brother John Kearney, Mrs. Margaret Dunn, Anna Kearney, John McKinley, George McKinley, they each, together with my namesake, William Hamilton Bertsch, to take share and share alike in the residue of my estate as hereinbefore set forth."

On June 29, 1912, Hamilton Kearney made the following codicil, to-wit:

"Whereas, I, Hamilton Kearney, did on the thirty-first day of December, 1898, make my will; and whereas in said will I did in clause 3 of my said will give, devise and bequeath to Mrs. Jane Mosely the sum of $1000 and other property, and also in clause 4 of my said will I bequeathed to Mrs. Daisy Matthews the sum of $500; and whereas in the dispensation of Providence my friend Mrs. Jane Mosely has departed this life, and by her last will and testament she has provided for her daughter, the said Mrs. Daisy Matthews above mentioned; therefore it is my will that the sums mentioned in clauses 3 and 4 of my will bequeathed to Mrs. Jane Mosely and Mrs. Daisy Matthews shall not be considered and are hereby canceled, and the sums mentioned therein shall be divided equally by my executor among my nephews and nieces mentioned in clause 6 of my will, and William Hamilton Bertsch, he taking an equal portion with each of them."

William Kearney, son of David Kearney, one of the nephews named in the original will, died before the death of the testator.

Prior to 1886 Robert Kearney, Hamilton Kearney and John Kearney owned and occupied the land in question, consisting of 472 acres in JoDaviess county, as tenants in common. Robert and Hamilton Kearney were never married and lived with their brother John. Prior to his death, on February 24, 1886, Robert Kearney executed his last will and testament, in which he gave to Hamilton and John Kearney, his brothers, all his interest and share in said real estate. This will was duly probated and entered of record. After the death of Robert, his brothers, Hamilton and John, lived upon and farmed said premises as tenants in common until December 4, 1904, at which time John died intestate, leaving a widow and children surviving him. On June 29, 1912, William Kearney, son of John Kearney, and his mother, occupied the premises, and Hamilton Kearney made his home with them. Hamilton Kearney died in January, 1916, leaving personal estate aggregating $9666.15 and an undivided one-half interest in said 472 acres, which undivided one-half is the land in question. The complainants are the daughters of David Kearney, a brother of John, Robert and Hamilton, who died some twenty years prior to the death of Hamilton.

The decree of the circuit court found, as alleged in the complainants' bill, that the devise contained in the second clause of the will lapsed and that the sixth clause of the will included the lapsed devise, so as to vest in each of the testator's nephews and nieces an undivided one-seventeenth of testator's undivided half of said premises, and that a like share in said estate was vested in William Hamilton Bertsch, son of Emma Bertsch, a niece of the testator.

The seven children of Annie McKinley, deceased sister of Hamilton Kearney, who were made defendants below, entered their appearances in the circuit court and answered,

admitting the allegations of the bill and that the relief prayed for should be granted. They appear here urging that the decree of the circuit court be affirmed.

Appellants, who are the seven children of John Kearney, deceased, contend that under the will, as modified by the codicil, Hamilton Kearney devised his interest in said real estate to them, the heirs of John Kearney; that the testator, knowing that his brother John was dead when the codicil was executed, re-published the original will, and by clause 2 in effect devised all of his lands to the heirs of John Kearney, or that if said legacy lapsed, as charged in complainants' bill, then said real estate descended as intestate property to the sixteen nieces and nephews to the exclusion of William Hamilton Bertsch, who is not an heir of Hamilton Kearney; that the sixth clause did not include real estate, and that final division under said sixth clause had been made by the executor and accepted by the legatees thereunder.

By the second clause of the will the testator gives and devises to his brother John Kearney all of his real estate, "to have and to hold the same to him and his heirs forever." He by this clause devised a fee simple title to the lands in question to his brother John. The ordinary form of a conveyance of a fee at common law was to the grantee and his heirs. (*Winter* v. *Dibble,* 251 Ill. 200.) It is contended by appellees that said second clause of the will is a devise within the rule in *Shelley's case.* The rule as stated by Coke (vol. 1, 104*a*,) is, that "when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, that always in such cases 'the heirs' are words of limitation of the estate and not words of purchase." The clause in question does not purport to devise to John Kearney a freehold estate with a limitation by way of remainder to his heirs, but said clause is a devise to John Kearney and his heirs,

which is the proper mode for devising a fee simple. The words "to have and to hold the same to him and his heirs forever" are not the words necessary to be employed to confer a freehold upon the ancestor with a remainder to his heirs, but are the words which in a will or conveyance transfer the fee. The rule in *Shelley's case,* therefore, has no application to this devise. *Johnson* v. *Buck,* 220 Ill. 226.

John Kearney died subsequent to the execution of the original will in question and prior to the making of the codicil thereto. The general rule is that a legacy or devise will lapse where the legatee or devisee dies before the testator. (40 Cyc. 1925, and cases there cited.) As we understand the contention of appellants, this is not disputed, but they contend that when the testator executed the codicil to his will without making any reference to the second clause of the original will, although he then knew of the death of his brother John, he in executing the codicil re-published the will as of the date of the codicil, and that the legal effect of such re-publication was to vest the fee to the real estate in the appellants, heirs of said devisee, John, and it is contended that parol evidence should have been admitted to show the circumstances surrounding the testator at the time the codicil was executed, as proof of his intention to so devise said real estate. As we have seen, by the language of the original will the testator devised a fee simple to his brother John. This being so, the grant to "his heirs forever" could not be held to be a devise to certain of his heirs, and unless there be found in the codicil language which constitutes a devise in terms, the fact that the will as re-published contains a lapsed devise is not, of itself, sufficient to vest the title to the property described in the lapsed devise in the heirs of the deceased devisee, where such devisee was given a fee.

While the execution of a codicil operates as a re-publication of the will, (*Defrees* v. *Brydon,* 275 Ill. 530; *Mosser* v. *Flake,* 258 id. 233; *Hobart* v. *Hobart,* 154 id. 610;)

yet a codicil does not operate to alter the original will except where it so designates. (*Doe* v. *Kett*, 4 Durn. & East, 601; *Comfort* v. *Mather*, 2 Watts & S. 450; *Campbell* v. *Jameson*, 8 Pa. St. 498.) In the case of *Doe* v. *Kett*, *supra*, the testator devised certain real estate "to Elizabeth Folsom and the heirs of her body lawfully to be begotten." Elizabeth Folsom died during the lifetime of the testator and prior to the date on which the testator made a codicil to his will. It was there contended that the execution of the codicil was a re-publication of the will, and that, inasmuch as Elizabeth Folsom had died prior to the time of the making of the codicil, leaving a son, which facts were then known to the testator, the testator must have intended by the codicil that said son should take the property under the words of the original devise, "to Elizabeth Folsom and the heirs of her body lawfully to be begotten." But it was there said by Lord Kenyon, chief justice, that the codicil "would operate as a re-publication of the will for many purposes, such as that of passing lands purchased after making the will, but not so as to alter the will. * * * If this codicil were sufficient to pass the estate to the representatives of E. Folsom there never would be a lapsed legacy when there was a re-publication of the will but it would always go in favor of the executors of the legatees deceased." To the same effect are the cases of *Comfort* v. *Mather*, *supra*, and *Campbell* v. *Jameson*, *supra*.

Counsel for appellants rely upon the case of *Davis' Heirs* v. *Taul*, 6 Dana, 51. We do not adopt the view announced in that case, but hold the true rule to be that where the codicil makes no reference to a clause of the will creating a devise which has lapsed, the re-publication of the will by the execution of such codicil does not alter such clause of the will nor create a new and different devise from that which has lapsed.

But it is urged that by the codicil there arose in the language of the will, when considered with the codicil, a

latent ambiguity, which makes admissible parol testimony to show the intent of the testator, and that if such testimony be admitted it would establish a devise by implication. Devises by implication are sustained where there is clearly shown an intention on the part of the testator to make a devise, as where a recital in the will is to the effect that the testator has devised something in another part of the will when, in fact, he has not done so, the erroneous recital operating as a devise of such property by implication, for the reason that it shows an intention to devise the property by the will. (*Noble* v. *Tipton,* 219 Ill. 182.) So in a case where a devise is not made in formal language by the will, the gift will be sustained by implication when the probability of the intention of the testator to make the gift is so strong that a contrary intention cannot be shown. (*Martin* v. *Martin,* 273 Ill. 595.) So, also, where there are no express words of gift but an intention to make a gift clearly appears from the will as a whole, such gift will be sustained as a gift by implication. (*Connor* v. *Gardner,* 230 Ill. 258; Rood on Wills, sec. 495.) To uphold a gift by implication the inference from the will of the testator's intention cannot rest upon conjecture but must be such as to leave no hesitation in the mind of the court and permit of no other reasonable inference. (*Connor* v. *Gardner, supra,* and cases there cited.) Examining the codicil in question in the light of these rules, we are unable to discover such an intention on the part of the testator as to bring the devise of the real estate in question within such rules, and appellants do not point out wherein such intention may be found. On the other hand, it is evident from the codicil that such an intention rests wholly in the realm of conjecture; that the only clauses to be affected by it were clauses 3 and 4, which give certain legacies to Jane Mosely and her daughter, Daisy Matthews. The testator, by the use of the term "whereas" in said codicil, clearly indicates that the only reason for making

the codicil was the fact that Jane Mosely had died and had provided for her daughter, Daisy Matthews. These legacies he directs shall be divided among his nieces and nephews and William Hamilton Bertsch. There is nothing in the will and codicil, considered together or separately, to indicate that any clauses other than 3 and 4 were to be affected. We are of the opinion that no gift by implication was made, as contended by appellants.

Appellants further contend that if the re-publication of the will did not create a devise of the real estate to them, then such real estate passed as intestate property and not as a part of the residuum of the estate, for the reason that the residuary clause (clause 6) is not broad enough, in terms, to include real estate. The testator by clause 6 directs that his executor sell and convert into money certain personal property, and further directs that "the proceeds of the same, together with the residue of my estate after the payment of the legacies and bequests heretofore set forth, shall be divided," etc. Appellants contend this language is not broad enough to include the real estate in question. The general rule is, that if a legacy or devise lapses and there is a general residuary clause broad enough in terms to embrace it, such legacy or devise will sink into the residuum. This is based on the presumed intention of the testator that the residuary clause shall include everything not effectually devised or disposed of. (*Dorsey* v. *Dodson,* 203 Ill. 32.) This rule is further aided by the presumption of law that where a man dies testate he intended by his will to dispose of all of his property and leave no part of his estate intestate. (*Martin* v. *Martin, supra; Eyer* v. *Williamson,* 256 Ill. 540; *Wixon* v. *Watson,* 214 id. 158; *Greenwood* v. *Greenwood,* 178 id. 387; *Hayward* v. *Loper,* 147 id. 41.) The term "residue" meaning that which remains, no particular mode of expression is necessary to constitute a residuary clause. (40 Cyc. 1563.) It is a general rule to so construe a residuary clause as to pre-

vent the intestacy of any part of the testator's estate unless there is an apparent intention to the contrary. (*Dorsey* v. *Dodson, supra; Davis* v. *Davis,* 62 Ohio St. 411; *In re Fuller,* 225 Pa. St. 626.) Here the testator designated the residuum of his estate as "the residue of my estate." There is nothing in the will to indicate the exclusion of this real estate therefrom and nothing to indicate that he intended that said real estate should pass as intestate property. We are therefore of the opinion that said real estate. passed under the sixth or residuary clause of the will, and that the circuit court did not err in so finding.

There appearing to be no error in the record, the decree of the circuit court will be affirmed.

*Decree affirmed.*