No. 20742.—

Jessie B. Moffet *et al.* v. Malcolm Webster Cash *et al.*— *ante,* p. 287.

Mr. JUSTICE ORR, dissenting:

I regret that I am unable to concur in the judgment of the majority opinion. While under ordinary circumstances I regard a dissenting opinion as a useless and wasteful undertaking, yet in this case I feel bound to express my reasons for differing with the opinion of the majority of the court.

In this case the sole question was whether Malcolm Webster Cash, an adopted child of H. Paul Cash, deceased, was included within the term "children" in the testator's will. It was not necessary to explore the hidden recesses of the testator's mind or to examine into the circumstances surrounding him when he made his will to determine this ques-

tion, as the language used by him was clear, unambiguous and certain in its meaning. By the sixth paragraph of his will he devised to his son, H. Paul Cash, 280 acres of land, he "to have and to hold the same so long as he may live and at his death the same to descend to his children." This court has repeatedly held that where the language of a will has a settled legal meaning the intention of the testator must be drawn from the will itself. (*Wingard* v. *Harrison*, 337 Ill. 387; *Lynn* v. *Worthington*, 266 id. 414.) Where such intention is clearly expressed by the testator this court will not indulge in any surmise that he used such language to express an intention or meaning he may have had in mind but failed to express. (*Foss* v. *State Bank and Trust Co.* 343 Ill. 94; *McCormick* v. *Hall*, 337 id. 232; *Ryan* v. *Beshk*, 339 id. 45.) Surrounding circumstances cannot be resorted to for the purpose of importing into a will any intention not expressed therein. (*Foss* v. *State Bank and Trust Co. supra; Fowler* v. *Black*, 136 Ill. 363.) At the time this will was made our statute on adoption of children provided that an adopted child, for the purpose of inheritance and other legal consequences and incidents of the natural relation of parents and children, had, with certain exceptions immaterial here, precisely the same legal rights as if he had been born in lawful wedlock. The testator was presumed to know the law and to make his will in view of the existing statute. (*Rudolph* v. *Rudolph*, 207 Ill. 266; *Carpenter* v. *Browning*, 98 id. 282; *Walker* v. *Walker*, 283 id. 11.) In *Flannigan* v. *Howard*, 200 Ill. 396, Justice Cartwright, speaking for this court, held that a child adopted after a will is made is within the meaning of section 10 of the Statute of Descent and for all purposes of inheritance stands in the same relation to an adoptive parent as a natural child. Likewise in *Ryan* v. *Foreman*, 262 Ill. 175, an adopted child was held to have the same rights in a pension fund as a natural child. This same principle was adhered to in sustaining an adoption proceeding in *Hopkins* v. *Gif-*

*ford,* 309 Ill. 363. These cases illustrate the humane and liberal attitude adopted by the court toward adopted children and are decisive that no narrow view of the relation will be taken to defeat the law. (*McNamara* v. *McNamara,* 303 Ill. 191; *People* v. *Cole,* 322 id. 95.) The Adoption statute (Smith's Stat. 1931, chap. 4, sec. 5,) provides that an adopted child shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption. In the devise by the testator to each of his daughters he provides, "to hold the same during her life and at her death the same to descend to her children the issue of her body." By this provision the testator expressly cut off the rights of any adopted children of his daughters. As to each of his sons, however, the will provides, "and at his death the same to descend to his children." By the plain meaning of this language the testator excluded adopted children as to his daughters and refused to exclude them as to his sons. Under our well-known rules of construction it is our duty to presume that he intended to make this distinction. Whether he intended to or not makes no difference, for the distinction is made in clearly expressed language which has a definite legal meaning and is not susceptible of any other construction. To give such language any other meaning is to enter the field of speculation and to reach a conclusion which does violence to the clearly written directions of the testator.

The opinion seeks to justify the conclusion reached by explaining that the testator used the language distinguishing the devises to his daughters from those to his sons because a child born to a daughter was born of her body, while such an expression would seem unnatural to a layman in referring to the child of a son. Whatever may have been the reason for this particular language, the fact remains that it is there. No court should tamper with nor attempt to construe such plain language against its ordinary, accepted meaning. To argue that the testator did not intend

the word "children," when used without qualifying words, to also include an adopted child of one of his sons is only to contradict the express language of the will. Any other conclusion contrary to the well-known meaning of the plain language used is simply the result of speculation and surmise and wholly unwarranted by the facts involved in this case. There is no good reason why the word "child" or "children" when used in the Adoption statute should have any different meaning than the .same words when used in a will. By all the rules of construction the testator is presumed to have had the statutory meaning in mind when he used these words in his will. The testator by paragraph 6 of his will made no restrictions which would exclude an adopted child of his son from taking the same portion as a natural child might have taken.

The decree of the circuit court, which held that the word "children" as used in the will included the adopted child of H. Paul Cash was, in my judgment, correct and should have been affirmed.

Mr. CHIEF JUSTICE STONE, also dissenting.